UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Bisson and Suzanne Brosseau,

      Plaintiffs,

      v.                                          Civil Action No. 2:13-cv-245

Jeremy Reppel, Alycia Horn, and
Joseph Yared,

      Defendants.

## OPINION AND ORDER
(Doc. 11)

This diversity action stems from a fire that destroyed a garage and damaged a dwelling on property that Plaintiffs David Bisson and Suzanne Brosseau were leasing to Defendants Alycia Horn (now Alycia Reppel) and Jeremy Reppel (the "Reppels"). According to the Complaint, the Reppels had allowed Defendant Joseph Yared to reside at the property, and the fire was caused by Yared's attempt to charge a car battery in the garage. (Doc. 1 at 3.) Plaintiffs sue Yared for negligence (Count I) and the Reppels for breaching the lease agreement by allowing Yared to reside at the property without authorization (Count III). Plaintiffs also allege that the Reppels were themselves negligent for allowing Yared to reside at the property, for failing to properly supervise him, and for failing to prevent the fire (Counts I and II). Plaintiffs seek damages from Defendants in an amount exceeding $75,000. (*See* Doc. 1 at 2, ¶ 6.)

The Reppels have filed a Rule 12(b)(6) Motion to Dismiss Counts I and II against them, arguing that they had no duty to supervise Yared or to control his conduct to prevent the fire.  (Doc. 11 at 1.)  Plaintiffs oppose the Motion, arguing that under Vermont law landlords may recover damages from their tenants for harm caused by the negligent act or omission of a third-party licensee of the tenant.  (Doc. 12 at 1.)  In an Order dated December 11, 2013 (Doc. 15), the Court invited supplemental memoranda from the parties on the applicability of certain Restatement provisions, as well as the impact of the Windham Superior Court's ruling in *Childs v. Valente*, No. 503-12-05 Wmcv (Vt. Super. Ct. June 28, 2007) (Wesley, J.), *available at* https://www.vermontjudiciary.org/20062010%20TCdecisioncvl/2007-10-29-19.pdf.  The Reppels filed a supplemental memorandum on January 2, 2014 (Doc. 17) and Plaintiffs filed a supplemental memorandum on January 7, 2014 (Doc. 18).  The Court appreciates the parties' thoughtful additional briefing.

The Court held a hearing on the Motion on February 6, 2014.  All parties have consented to direct assignment to the undersigned Magistrate Judge.  (Docs. 2, 7, 16.)  For the reasons stated below, the Reppels' Motion to Dismiss (Doc. 11) is GRANTED.

## **Factual Background**

The essential allegations in the Complaint are as follows.  Plaintiffs, who are Vermont residents, own certain real property in Colchester, Vermont.  On April 19, 2011, the Reppels signed a lease agreement with Plaintiffs to rent the Colchester property.  The written agreement provided that no persons other than Alycia Horn and Jeremy Reppel were to reside at the premises unless approved by the landlord in writing.  (Doc. 1 at 2,

¶ 10.)  The agreement also provided—in language mirroring 9 V.S.A. § 4456(c)—that "Tenant shall not . . . negligently destroy, deface, damage, or remove any part of the premises . . . or negligently permit any person to do so."  (*Id.* ¶ 11.)  The lease additionally stated that "Tenant shall not keep or have on the premises any article or thing that is dangerous[,] inflammable, or explosive."  (*Id.*)  Finally, the lease contained a provision entitling the landlord to recover attorney's fees, damages, costs, and expenses in the event that the tenant violated the lease and it became necessary for the landlord to retain an attorney.  (*Id.* ¶ 12.)[1]

Unbeknownst to Plaintiffs, the Reppels allowed Yared to live with them at the property.  Yared was not a party to the lease agreement and did not pay rent to Plaintiffs.  On April 29, 2012, a fire destroyed the garage and severely damaged the adjacent dwelling.  At the time of the fire, Yared either owned, possessed, or had control over a Porsche 911, which was parked in the garage.  At the time of the fire, Yared was attempting to charge the car battery for the Porsche and had left the charger attached overnight for several days.  The fire originated in the direct vicinity of the Porsche and the battery charger.

The Complaint alleges that the Reppels are currently New York residents and that Yared is currently a resident of New Hampshire.

---

[1] The lease itself is not attached to the Complaint, nor does it otherwise appear in the record.  However, the provisions recited above are, according to the Complaint, the only pertinent provisions of the lease.  Defendants have not asserted that any other provision of the lease is relevant.

3

## Analysis

The Reppels have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544 at 570; *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). This burden is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98.

Because the Court's jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C § 1332(a)(1), the Court applies the substantive law of the State of Vermont. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Court must predict how the Vermont Supreme Court would decide the issue presented. *See Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 200 (2d Cir. 2012).[2]

---

[2] The Court need not resort to certification in this case because there are sufficient precedents to resolve the pending Motion.

4

To prevail on a negligence claim in Vermont, a plaintiff must show that there is "a legal duty owed by defendant to plaintiff, breach of that duty, that such breach [is] the proximate cause of plaintiff's harm, and that plaintiff . . . suffered actual loss or damage." *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 76, 665, A.2d 39, 42 (1995). "Duty, the first element, is central to a negligence claim, and its existence is primarily a question of law." *Endres v. Endres*, 2008 VT 124, ¶ 11, 968 A.2d 336, 340. As noted above, the Reppels argue that they had no duty to supervise Yared or to control his conduct to prevent the fire. (Doc. 11 at 1.)

In support of that argument, the Reppels note that Vermont follows the rule of the Restatement (Second) of Torts § 315 (1965) that "[g]enerally, there is no duty to control the conduct of another in order to protect a third person from harm." *Sorge v. State*, 171 Vt. 171, 175, 762 A.2d 816, 819 (2000).[3] The two exceptions to that general rule are where: "(a) a special relation exists between the actor and the third person . . . , or (b) a special relation exists between the actor and the other . . . ." *Id.* at 176, 762 A.2d at 819 (quoting Restatement (Second) of Torts § 315). The relations that qualify under those exceptions appear in §§ 314A, 316–319, and 320. Restatement (Second) of Torts § 315 cmt. c. The Reppels maintain that neither exception applies in this case. (*See* Doc. 13 at 3; Doc. 17 at 4–5.) Plaintiffs agree that neither exception applies, but insist that, under

---

[3] All of the sections in Topic 7 of Chapter 12 of the Restatement (Second), including § 315, have recently been superseded. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm, ch. 7 Scope Note (2012). However, with respect to the issues presented here, this Court has found no indication that the Vermont Supreme Court has abandoned the approach taken in the Restatement (Second).

5

the doctrine of "waste," the Reppels had a duty to protect the rental premises from damage.  (*See* Doc. 12 at 3; 18 at 1–2).

In Vermont, a tenant's duties include a common-law obligation to "commit no waste" and to "permit no waste to be committed."  *Sabourin v. Woish*, 117 Vt. 94, 96, 85 A.2d 493, 495 (1952); *see also* Restatement (Second) of Property: Landlord and Tenant § 12.2 & cmt. a (1977).  "Waste" can include either a "permanent diminution in property value" or "repairable damage to property."  *Prue v. Royer*, 2013 VT 12, ¶¶ 61–65, 67 A.3d 895, 914–15.

The tenants' obligation to neither commit nor permit waste was an obligation that resulted in liability for the tenants in *Prevo v. Evarts*, 146 Vt. 216, 500 A.2d 227 (1985).  In *Prevo*, defendant Alexander Evarts arranged by oral contract with Clarence Prevo to rent an apartment for his estranged wife, Judith Browne, and her sons while she and Evarts attempted to reconcile their marital differences.  Evarts paid the rent with his personal checks, and never indicated to Prevo that they were made on behalf of anyone other than himself.  While Browne was occupying the premises, her sons and their invitees caused "substantial damage" to the apartment: "Walls in each room, except the bathroom, had holes smashed in them; windows on the first floor and in the cellar were broken; a light was damaged; a door was heavily scratched, and a number of nails were driven into the walls."  *Prevo*, 146 Vt. at 218, 500 A.2d at 228.  The landlords sought to recover for the damage, and the trial court, sitting without a jury, found Evarts and Browne liable on theories of estoppel, express contract, implied contract, and voluntary waste.

On appeal, defendants claimed that they could not be held responsible for waste to the property because their actions were not the proximate cause of the waste, which occurred solely as the result of actions by third persons. The Supreme Court rejected that argument, reasoning as follows:

> [T]he waste was committed by persons who were on the premises with the permission of the occupants. The only cases in which the tenant has been found not to be liable for waste committed by third persons are cases in which the third persons were strangers. *Bresnahan v. Hicks*, 260 Mich. 32, 35, 244 N.W. 218, 220 (1932) (damage done by thief); *Winfree v. Jones*, 104 Va. 39, 45, 51 S.E. 153, 155 (1905) (damage done by trespasser). In such circumstances, the tenant was found not to be liable unless his own negligence was a proximate cause of the waste.

*Id.* at 219, 500 A.2d at 229.

The Reppels recognize the doctrine of waste, but maintain that waste is distinct from negligence because waste is a property-law concept and because the measure of damages is different. Those arguments do not entitle the Reppels to dismissal. The two doctrines are not entirely unrelated, since negligence can be the cause of waste. *Id.* Plaintiffs' negligence theory is broad enough to encompass waste. *See* Restatement (Second) of Property: Landlord and Tenant § 12.2, Reporter's Note 7 ("A negligence theory may be broad enough to cover most cases where the tenant has been held liable for someone else's conduct.").[4]

However, the Reppels also argue that the doctrine of waste does not apply in this case. (Doc. 17 at 9.) According to the Reppels, a tenant is not liable for waste when the damage was caused by accident. (*See id.*) Plaintiffs maintain that the doctrine of waste

---

[4] The Court's conclusions make it unnecessary to address here whether there is a different measure of damages for Plaintiffs' negligence claim based on waste than for any other theory of recovery.

7

covers the type and manner of property damage at issue in this case. (Doc. 18 at 4.) Plaintiffs insist that *Prevo* is not distinguishable from this case, and note that the *Prevo* Court cited *Winfree v. Jones*, 51 S.E. 153 (Va. 1905), which also involved a claim for property loss as a result of a fire.

In *Prevo* the Court stated that "[t]he only cases in which the tenant has been found not to be liable for waste committed by third persons are cases in which the third persons were strangers." 146 Vt. at 219, 500 A.2d at 229. That statement is consistent with the following remark from the Restatement (Second) of Property: "There will be attributed to the tenant, absent an agreement otherwise, the acts of anyone who is on the leased property with the consent of the tenant while the tenant is entitled to the possession of the leased property." Restatement (Second) of Property: Landlord and Tenant § 12.2 cmt. g.[5] But as the Reppels point out (Doc. 17 at 9), the Restatement elsewhere states that the "[c]onduct of others may be attributable to the tenant *in some instances where he has permitted it when he should have restrained it*." Restatement (Second) of Property: Landlord and Tenant § 12.2 cmt. a (emphasis added).

To the extent that the Restatement is unclear about whether the acts of third parties are always or only sometimes attributable to the tenants, that problem is obviated if the conduct is not "waste" with respect to the tenants. *See id.* (noting that the scope of § 12.2 is limited to "the material historically dealt with under the term waste"). Not all injurious acts constitute "waste" in the legal sense. *See Bresnahan*, 244 N.W. at 220 ("'In the

---

[5] The rationale for that position is to prevent the landlord from being "forced to sue the third party, who may not be available or who may be judgment proof." *Id.* § 12.2 Reporter's Note 7.

8

popular sense, any injury may be waste, but it is not waste in the legal sense, unless caused in such manner as to be within the legal definition of either commissive or permissive waste.'") (quoting *Rogers v. Atl. G. & P. Co.*, 107 N.E. 661, 661 (N.Y. 1915)); *see also* 93 C.J.S. *Waste* § 21 (2013) ("[T]he destruction of a building is not necessarily waste."). Indeed, there are no "'precise rules establishing what acts shall constitute *waste*'" and it is difficult to articulate any such rules. *Prue*, 2013 VT 12, ¶ 63 (quoting *Keeler v. Eastman*, 11 Vt. 293, 294 (1839)). The *Prevo* Court's suggestion that tenants are always liable for "waste" committed by non-strangers does not answer the critical question in this case: As to the Reppels, was the injurious act "waste" in the first place? *Prevo* did not involve destruction of the premises due to accidental fire, and there was no issue in that case about whether the damage in that case constituted waste.[6]

The Court concludes that, as to the Reppels, the accidental fire in this case was not waste. Vermont recognizes a tenant's obligation to neither commit nor permit waste. *Sabourin*, 117 Vt. at 94, 85 A.2d at 495. But that obligation "has never been so construed as to make a tenant answerable for accidental damages, or to bind him to rebuild, if the buildings are burned down or otherwise destroyed by accident." *United States v. Bostwick*, 94 U.S. 53, 68 (1876). Multiple other authorities agree that unless a tenant is herself at fault, she is not responsible for destruction by accidental fire. 8 Powell on Real Property § 56.05 & n.49 (Michael Allan Wolf ed., LexisNexis Matthew Bender 2013); *see also* 1 Milton R. Friedman & Patrick A. Randolph, Jr., *Friedman on Leases* § 9:1:1

---

[6] The Supreme Court in *Prue* also did not address this threshold issue. The only element of waste raised or considered on appeal was the "permanent injury" requirement. *Prue*, 2013 VT 12, ¶¶ 64–65.

(5th ed. 2012) ("The tenant also was under no legal obligation to repair or restore if the damage was not due to his fault."); 2 Tiffany Real Property § 643 (3d ed.) (modern rule exempts a tenant from liability for fire not caused by his negligence); 78 Am. Jur. 2d *Waste* § 25 (2014) ("[I]njury to the premises by a fire caused by the negligence of a third person does not constitute waste where the tenant is free from fault.").[7]  The Court predicts that the Vermont Supreme Court would reach the same conclusion.

*Winfree* is entirely consistent.  In that case, the tenant had failed to lock the door to the property when he moved out on December 9, making it possible for a third party to enter the house and set it on fire on December 30.  51 S.E. at 154.  The Virginia Supreme Court of Appeals concluded that the tenant could not be liable, holding that "[t]he injury complained of was the direct and immediate consequence of the act of the unknown party in setting fire to the house, and the damage cannot, under the law, be traced to the remote negligence of leaving the door unfastened." *Id.* at 155.  Since the tenant's negligence was not a proximate cause of the fire, there was no liability for waste.

At least two Vermont Superior Court cases support this Court's conclusion.  *See Windsor v. United States*, 699 F.3d 169, 177 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (in predicting what the state's law is, it is proper for the federal court to consult the rulings of the state's trial courts).  In *Union Mutual Fire Insurance Co. v. Joerg*, the father of one of the tenants was living with them; he fell asleep or passed out while smoking, resulting in a fire that killed him and severely damaged the premises.  *Joerg*,

---

[7] When the tenant is at fault, then the doctrine of waste might apply, although it might be subsumed into a more general negligence theory. *See Travelers Indem. Co. of Am. v. Deguise*, 2006 VT 87, ¶¶ 1, 3, 914 A.2d 499, 499–500 (tenants were negligent when they emptied smoldering materials from an ashtray into a trash can or wastebasket).

10

2003 VT 27, ¶ 2, 824 A.2d 586, 588.  The Orleans Superior Court held that the tenants had no duty to supervise the father.  *Id.* ¶ 1.  The Supreme Court did not review that holding because it concluded that the plaintiff-insurance company could not bring a subrogation action against the tenants for the losses paid to the landlord.  *Id.* ¶ 13.

Also persuasive is the Windham Superior Court's decision in *Childs v. Valente*, No. 503-12-05 Wmcv (Vt. Super. Ct. June 28, 2007) (Wesley, J.), *available at* https://www.vermontjudiciary.org/20062010%20TCdecisioncvl/2007-10-29-19.pdf.[8]  In that case, the tenant's guests had placed ashes in plastic garbage bags and left the bags on the rental property's deck.  The landlord, Mr. Childs, collected the bags and placed them in the garage attached to his house.  A fire later broke out in the area where the bags had been placed, causing injuries to Mr. Childs and resulting in damage to the rental premises and Mr. Childs's home.  Mr. Childs and his wife sought damages from the tenant, whom they asserted had breached a duty to keep the leased premises free of hazardous conditions created by his guests.

The Superior Court granted summary judgment to the tenant.  The court noted the general rule that there is no duty to control the conduct of another in order to protect a third person from harm, and also the exceptions, but found no liability under those tort rules.  The Superior Court also distinguished *Prevo*, reasoning as follows:

> Not strictly a negligence case, *Prevo* distinguished prior cases which found no liability for waste committed on rental premises by strangers and imposed a straightforward responsibility on tenants to return rental

---

[8] The Vermont Supreme Court affirmed the result in *Childs*, although it did not review the Superior Court's interpretation of the law governing the scope of a tenant's duty of care because that issue was not properly before the Court on appeal.  *Childs v. Valente*, No. 2007-333, 2008 WL 2793869, at *2 (Vt. Apr. 2008) (unpublished mem.).

11

> premises in reasonably maintained conditions.  Lacking any further elaboration of that duty, however, it cannot reasonably be stretched to include liability for the negligent creation of a dangerous condition that results in harm to other property or persons, even if it is the result of actions taken by an invited guest on the rental premises.  Plaintiff's citations to cases in other jurisdictions are inapplicable because they are also restricted to damage caused by third parties to the leased premises.

*Childs*, No. 503-12-05 Wmcv, at 8 (citation omitted).  The Superior Court stated that the tenant's lack of duty was "supported by holdings in other cases on facts better matched to the present circumstances." *Id.* at 8–9 (citing *Allstate Ins. Co. v. Fritz*, 452 F.3d 316 (4th Cir. 2006) and *Travelers Ins. Co. v. Linn*, 510 S.E.2d 139 (Ct. App. Ga. 1998)).

According to the court:

> Both *Fritz* and *Linn* declined to recognize a tenant host's obligation to supervise adult guests even in the exercise of potentially dangerous but essentially routine activities on the leased premises.  There was no evidence in either *Fritz* or *Linn* that the hosts were actually aware of the dangerous condition created by their guest nor that they should have foreseen it might occur.

*Id.* at 9.  The Superior Court concluded:

> Even according Plaintiffs the benefit of reasonable inferences, the evidence in the current case is similar.  Nothing establishes that Mr. Valente [the tenant] was aware of or directly involved with the disposal of live ashes on the day the Childs' fire broke out.  No evidence suggests that he had any reason to suspect one of his guests might dispose of ashes in a patently dangerous fashion.  Since he was not personally involved and had no basis to foresee the harm, the imposition of personal liability in this case would effectively amount to strict liability, an extreme cause of action for which no justification has been established.

*Id.* at 9–10.  In short, the Superior Court arrived at the conclusion articulated by the authorities cited above: the tenant is not liable for destruction of the rental premises by accidental fire unless the tenant is himself at fault.

12

Plaintiffs assert that *Childs* is distinguishable because the damage in that case was to the *landlord's* own residence, whereas in this case the fire destroyed the actual leased premises.  The *Childs* court apparently did cite that distinction as the basis for distinguishing certain cases that had been cited by the plaintiffs.  However, the plaintiffs in *Childs* had alleged damage to the rental premises as well as their own home.  *See id.* at 1 n.1.  Moreover, in the cases that the Superior Court found analogous—*Fritz* and *Linn*—the damage was to the rental premises.  The distinction upon which Plaintiffs rely, therefore, is no basis for distinguishing *Childs*.

In this case, there is no allegation that the Reppels were involved in Yared's attempt to charge the battery, or that they were even aware of it.  Absent any personal involvement on the part of the Reppels, or any possibility that they might foresee the harm, there is no basis for imposing liability.  As to the Reppels, the fire in this case does not constitute "waste."[9]

Nothing in the lease language or 9 V.S.A. § 4456 compels a contrary result.  The lease provided that "Tenant shall not . . . negligently destroy, deface, damage, or remove any part of the premises . . . or negligently permit any person to do so."  Section 4456(c) provides: "The tenant shall not deliberately or negligently destroy, deface, damage or remove any part of the premises or its fixtures, mechanical systems or furnishings or deliberately or negligently permit any person to do so."  The allegations of the Complaint do not articulate a breach of those contractual and statutory duties.  There is no allegation

---

[9] The Court expresses no opinion at present as to Yared's potential liability on waste or negligence theories.

13

that the Reppels themselves negligently damaged or destroyed the property.  Nor can the Reppels be said to have "negligently permitted" Yared to do so because, as stated above, there is no allegation that the Reppels were involved in Yared's attempt to charge the battery, or that they were even aware of it.

Finally, the lease term prohibiting the tenant from keeping or having "on the premises any article or thing that is dangerous[,] inflammable, or explosive" also does not result in liability for the Reppels.  The Court interprets that provision as prohibiting the tenant from having extra-hazardous things at the premises.  While a car battery connected to a charger could theoretically be dangerous, inflammable, and explosive, neither the battery nor the charger are extra-hazardous.  One might reasonably expect to find both items in a residential garage.

## Conclusion

The Reppels' Motion to Dismiss (Doc. 11) is GRANTED.  The portion of Count I that is directed against the Reppels is DISMISSED.  Count II, which is directed solely against the Reppels, is DISMISSED.  The portion of Count I that is directed against Yared remains in the case, as does Count III, which is directed solely against the Reppels.

Dated at Burlington, in the District of Vermont, this 12th day of February, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge